**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEREMIAH WILLIAMS**, <br><br> Plaintiff, <br><br> v. <br><br> **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**, <br><br> Defendant. | Civil Action No. 24-614 (ZNQ) (JBD) <br><br> **ORDER AND OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for an ex parte temporary restraining order[1] (TRO) filed by Plaintiff Jeremiah Williams ("Williams"). He seeks an order that: (1) requires Defendant National Collegiate Athletic Association (the "NCAA") to reinstate his eligibility to participate in Division I collegiate athletic competition, specifically to play for the Rutgers University Men's Basketball Team; and (2) enjoins the NCAA from enforcing its Rule of Restitution (NCAA Bylaw § 12.11.4.2) against Williams for complying with, and relying on, an injunction entered by this Court and one entered by a district court for the District of West Virginia.

    The Court has carefully considered the Motion and for the reasons set forth below, the Court will GRANT his request for an ex parte Temporary Restraining Order.

---

[1] The Verified Complaint and Motion were filed yesterday after 4:00 p.m. This matter was assigned to the undersigned this morning after 9:00 a.m. The Motion as initially filed did not seek *ex parte* relief, however, in a later-filed certification attesting that the Complaint and Summons had been served on Defendant, his counsel recognized that, given the lack of time before the next Rutgers basketball game tomorrow afternoon, *ex parte* relief would be needed. (ECF No. 3.) Based on the foregoing, the Court is treating the Motion as an emergent one seeking an ex parte TRO.

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of the Motion, the Court assumes as true the following relevant facts from the Verified Complaint.

A.  **WILLIAMS' TRANSFER AND THE NCAA'S TRANSFER ELIGIBILITY RULE AND RULE OF RESTITUTION**

Williams is a member of the Rutgers University Men's Basketball Team. (Compl. ¶ 7.) Previously, he played for Temple University then Iowa State University. (Compl. ¶ 12–13.) Williams's successive transfers placed him in the NCAA's category of "4-4-4 transfer athletes."[2] (Compl. ¶ 17.) These athletes were required by NCAA Bylaw 14.5.5.1 (the "Transfer Eligibility Rule") to sit out for an entire season after their second transfer. (*Id.*) However, the United States District Court for the Northern District of West Virginia, on December 18, 2023, issued a preliminary injunction enjoining the NCAA from enforcing the Transfer Eligibility Rule "until a full and final trial and decision on the merits." (Preliminary Injunction Order ("West Virginia Order") issued on consent at 2–3, attached as Exhibit B to the Verified Complaint at ECF Nos. 58–60.) The West Virginia Order also enjoined the NCAA from enforcing Section 12.11.4.2 of its Bylaws (the "Rule of Restitution") that authorized the NCAA to penalize student-athletes and their member schools for relying on court-issued preliminary injunction orders barring the NCAA from unlawful conduct and mandating a student-athlete if the injunctive relief was later revoked for any reason. (Compl. ¶ 26.) As a basis for issuing the West Virginia Order, that district court found a likelihood of success on the merits with respect to the states' claim that the Transfer Eligibility Rule violates Section 1 of the Sherman Act. (West Virginia Order at 20.) It also found

---

[2] So-called because they transferred from one four-year school to a second four-year school then a third four-year school. (Compl. ¶ 17.)

that for its injunctive relief to be effective as to the Transfer Eligibility Rule, it must also enjoin the Rule of Restitution. (West Virginia Order at 27–30.)

### B. WILLIAMS' GAMBLING AND THE NCAA'S RESULTING PENALTY

As a separate matter, the Complaint admits Williams made a series of bets on various college and professional sporting events that totaled approximately $320 from December 2022 to February 2023. (*Id.* ¶ 14.) In September 2023, he pled guilty to underage gambling. (*Id.* ¶ 15.) NCAA case representatives assigned to Williams's case "repeatedly advised" him that, as a result of his admitted sports betting, it would impose a suspension of 50% of one basketball season, which equates to 15 games. (*Id.* ¶ 32.) Aware of this, Williams voluntarily sat out for the first twenty games of the Rutgers season. (*Id.*) Nine of those games pre-date the West Virginia Order. On January 31, 2024, the NCAA imposed a 15-game suspension on Plaintiff for violating its sports-wagering rule while a student-athlete at Iowa State University. (*Id.* ¶ 3.) The NCAA has refused to credit Williams with the nine games he sat out that pre-date the West Virginia Order, arguing that he must serve his suspension based on games after the West Virginia Order. (*Id.* ¶ 4.)[3] The import of the NCAA's position is that it would render Williams ineligible to play until February 18, 2024. (*Id.*) The next Rutgers Men's Team basketball game is tomorrow, Saturday, February 3, 2024 at 4:00 p.m. (*Id.*)

## II. JURISDICTION

The Court has subject matter jurisdiction over the claims of the Complaint under 28 U.S.C. §§ 1331, 1332, and 1367.

---

[3] The Verified Complaint alleges that the NCAA, apparently inconsistently, also asserted that Plaintiff was ineligible to play in the nine pre-West Virginia Order due to his sports-betting suspension. (Compl. ¶ 4.)

3

### III. LEGAL STANDARD

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). This remedy should be granted only if movants establish that: (1) "they are likely to succeed on the merits of their claims"; (2) "they are likely to suffer irreparable harm without relief"; (3) "the balance of harms favors them"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mars Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted). With respect to the first factor, "on an application for injunctive relief, the movant need only make a showing of reasonable probability, not the certainty, of success on the merits." *Atl. City Coin & Slot Serv. Co., Inc. v. IGT*, 14 F. Supp. 2d 644, 657 (D.N.J. 1998) (internal quotation marks and citations omitted).  In the end, however, "[t]he burden is on the moving party 'to convince the district court that all four factors favor preliminary relief.' " *Peter v. Att'y Gen. of N.J.*, Civ. No. 23-3337, 2023 WL 4627866, at *1 (D.N.J. July 19, 2023) (quoting *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

### IV. DISCUSSION

#### A. LIKELIHOOD OF SUCCESS ON THE MERITS

To demonstrate a likelihood of success on the merits, a plaintiff must show that they "can win on the merits (which requires a showing of significantly better than negligible but not necessarily more likely than not)." *Riley v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Williams both alleges and argues that the NCAA's refusal to credit him for the games he sat out before the West Virginia Order was entered is effectively attempting to enforce the now-unenforceable Transfer Rule.  The Court agrees.

The burden of the Court's analysis with respect to the likelihood that Williams will succeed on the merits of a Sherman Act claim is substantially lessened by the well-reasoned (albeit non-binding) decision from the district court from the West Virginia. That district court has already ably concluded that there is a "strong likelihood" that the Transfer Rule violates Section 1 of the Sherman Act. (*See* West Virginia Order at 20.) This Court reaches the same conclusion for the reasons provided by the West Virginia district court and highlighted by Williams in his submission with respect to the relevant elements of his antitrust claim. All that remains for this Court to determine is whether the NCAA's actions in this case equate to an attempt to enforce the Transfer Rule.

Based on the record, the arithmetic appears relatively straightforward. The NCAA has suspended Williams for 15 games for sports-betting. He sat out for 20 games. The NCAA has conceded that, like Williams, it was counting his sit-outs from the beginning of the season, rather than from when it issued its suspension. Williams should therefore, in the absence of some second reason, be eligible to play tomorrow. The NCAA has a second reason: the Transfer Rule. The problem for the NCAA is that its invocation of the Transfer Rule *now*, in an attempt to discredit Williams' 9 games before the West Virginia Order, amounts to an impermissible attempt to enforce the Transfer Rule. This is a violation of the West Virginia Order's preliminary injunction, whose stated purpose was to prevent the NCAA from engaging in anti-competitive conduct.

For these reasons the Court finds that Williams has shown the requisite likelihood of success with respect to his Sherman Act claim (Count I). Accordingly, the Court does not reach the other claims asserted in his Verified Complaint.

### B. IRREPARABLE HARM

The second factor is irreparable harm. As the West Virginia district court noted, "[c]ourts have repeatedly found that college students suffer irreparable harm when they are denied the

opportunity to play sports." (West Virginia Order at 21) (quotation marks omitted) (collecting cases). And as it more colorfully observed "[i]t takes one throw, one catch, one shot, one block to make a student-athlete a household name across the nation." (West Virginia Order at 14.) Were the NCAA not enjoined, Williams would be forced to forego four more games, depriving him of the opportunity to develop his skills and his in-game rapport with his teammates, further his team's post-season hopes, to market his name and likeness, and to showcase his abilities to future employers. His next game is tomorrow afternoon, less than twenty-four hours away. For these reasons, the Court finds that Williams has shown irreparable harm that is both substantial and immediate.

## C.  BALANCE OF THE EQUITIES

For the third factor, the Court balances the equities as between the parties. As set forth above, the Williams is likely to suffer substantial, immediate, and irreparable harm should he be prevented from playing. The NCAA, by contrast, would suffer little harm insofar as, should they later succeed on the merits, they can resume enforcement of Williams's suspension. Accordingly, the Court finds that the balance of the equities weighs heavily in Williams's favor.

## D.  THE PUBLIC INTEREST

An injunction would first serve the public interest because, as the West Virginia district court also aptly observed, "[f]ree and fair competition in the labor markets is essential to the American economy." (West Virginia Order at 27.) It would also serve a second, equally important public interest: seeing that court orders like the West Virginia Order are enforced. The Court therefore finds that an injunction would serve the public interest.

Based on the foregoing, the Court concludes that the Motion for an ex parte TRO should be granted.

### E. RESTITUTION RULE

Finally, Williams asks that the Court enjoin the NCAA's Restitution Rule in addition to its Transfer Rule. The Court hereby adopts the West Virginia Court's well-reasoned conclusion that the Restitution Rule must be enjoined for the injunction of the Transfer Rule to have meaningful effect. This Court will therefore also enjoin the Restitution Rule.

### F. SECURITY

The Court finds that because it does not appear that the NCAA will suffer any financial burden in complying with this injunctive relief, no security will need to be posted prior to the issuance of this Order.

## V. CONCLUSION

For the reasons set forth above, IT IS on this 2nd day of February 2024,

**ORDERED** that the Motion for an ex parte Temporary Restraining Order (ECF No. 1) filed by Plaintiff Jeremiah Williams is hereby GRANTED; and

**IT IS FURTHER ORDERED** that the NCAA must immediately reinstate Williams's eligibility to participate in Division I collegiate athletic competition and, specifically, to play for the Rutgers University Men's Basketball Team; and

**IT IS FURTHER ORDERED** that the NCAA is enjoined from enforcing the Rule of Restitution (NCAA Bylaws, § 12.11.4.2) against Williams for complying with and relying on the West Virginia Injunction and the TRO and injunctive order entered by this Court; and

**IT IS FURTHER ORDERED** that no security is required; and

7

**IT IS FURTHER ORDERED** that the Court will set a date and time for a conference with the parties in short order.

Date: **February 2, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
